IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ALLSTATE INSURANCE COMPANY,                         06-CV-653-BR

       Plaintiff,                                   OPINION AND ORDER

v.

STEVEN G. HALL, an individual;
HARSHMAN CONSTRUCTION, INC.,
an Oregon corporation; JAIME
CASTRO; and LISA CASTRO,

       Defendants.


**DOUGLAS F. FOLEY**
Foley & Buxman, PLLC
13115 N.E. 4th Street, Suite 260
Vancouver, WA 98684
(360) 883-0636

       Attorneys for Plaintiff

1 - OPINION AND ORDER

**MARK M. LeCOQ**
**JOEL A. PARKER**
Schwabe, Williamson & Wyatt, PC
Pacwest Center
1211 SW Fifth Avenue, Suite 1900
Portland, OR 97204
(503) 222-9981

      Attorneys for Defendant Steven G. Hall

**BARRY M. MOUNT**
**SKIP WINTERS**
Bodyfelt Mount Stroup & Chamberlain, LLP
707 SW Washington Street, Suite 1100
Portland, OR 97205-3528
(503) 243-1022

      Attorneys for Defendant Harshman Construction, Inc.

**J. LEE STREET**
**SARAH E. GREENLEY**
The Aldrich Law Office, PC
522 SW Fifth Avenue, Suite 1230
Portland, OR 97204
(503) 226-7045

      Attorneys for Defendants Jamie Castro and Lisa Castro

**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motions to Dismiss Plaintiff's Complaint (#12, #15, and #18).

    On May 5, 2006, Plaintiff Allstate Insurance Company filed this action for declaratory judgment against Steven G. Hall; Harshman Construction, Inc.; Jaime Castro; and Lisa Castro based on diversity jurisdiction and the Declaratory Judgment Act, 28 U.S.C. § 2201(a).  Hall, Plaintiff's insured, and Harshman are

2 - OPINION AND ORDER

defendants in an underlying state-court action brought by the Castros for alleged defects in the construction of their home. Plaintiff alleges the insurance policies issued to Hall by Plaintiff do not provide coverage for the claims against Hall in the state-court action and requests this Court to enter a judgment declaring Plaintiff does not have a duty to defend or to indemnify Hall as to those claims.

Hall and the Castros filed Motions to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Castros' state-court action consists of claims that require Plaintiff to defend Hall, and, therefore, Plaintiff's declaratory-judgment action fails to state a claim. The Castros' Motion to Dismiss also requests the Court to decline jurisdiction over this declaratory judgment action pursuant to Federal Rule of Civil Procedure 12(b)(1).  Hall joined in the Castros' Rule 12(b)(6) Motion to Dismiss, and Harshman joined in the Rule 12(b)(6) Motions to Dismiss of both Hall and the Castros.  Thus, all four Defendants seek dismissal of Plaintiff's Complaint under Rule 12(b)(6), and the Castros also seek dismissal of Plaintiff's Complaint under Rule 12(b)(1).

For the following reasons, the Court **DENIES** Defendants' Motions to Dismiss.

3 - OPINION AND ORDER

## BACKGROUND

### The State-Court Action

On January 18, 2006, the Castros filed a complaint against Hall and Harshman in Washington County Circuit Court, Case No. C06-0195CV, for breach of contract, negligence, and misrepresentation. In the state-court action, the Castros allege the following:

In 1997 Hall applied for a building permit to construct a house at 22168 S.W. Hillsboro Highway, Newberg, Oregon (Home), and declared on the application that Harshman would act as general contractor. Harshman and Hall acted jointly as general contractors and builders of the Home. As the builders, Harshman and Hall were jointly responsible for constructing the Home in a reasonable and workmanlike manner and for complying with the Oregon Residential Building Code. Harshman and Hall were also jointly responsible for ensuring that all work on the Home performed by subcontractors met these standards.

The Home was substantially completed in February 2000. Harshman and Hall acted as joint venturers in selling the new and unoccupied Home to the Castros in April 2000. Thereafter, Harshman and Hall performed certain repair and warranty work on the Home. Beginning in September 2004, the Castros had the Home inspected and discovered extensive defects in the original construction of the Home, which consisted of water leakage that

4 - OPINION AND ORDER

caused hidden property damage.  The Castros allege the water leakage and hidden property damage were the result of faulty and incomplete workmanship, improper and inadequate building materials, and noncompliance with the Building Code.

In their state-court complaint, the Castros made the following claims against Hall:

> <u>Breach of Contract</u>:  Pursuant to the Home Sale Agreement, Harshman and Hall agreed and promised the Home would be weatherproof and would be constructed in a reasonable and workmanlike manner in accordance with the Building Code.  They also agreed and promised to be solely responsible for ensuring that all work on the Home performed by subcontractors met those standards.
>
> <u>Negligence and Negligence *per se*</u>:  As the builders of the Home, Harshman and Hall were required to and had a duty to ensure the Home was weatherproof and to construct the Home in a reasonable and workmanlike manner and in compliance with the Building Code and other applicable laws and specifications.
>
> <u>Misrepresentation</u>:  Hall misled the Castros through his actions and inactions by representing he was a builder licensed by the Oregon Construction Contractors Board.  The Castros relied on Hall's misrepresentation when they decided to purchase the Home.

5 - OPINION AND ORDER

On March 7, 2006, Harshman filed a cross-claim in the state-court action against Hall in which Harshman alleged he was not part of any joint venture with Hall and Hall was responsible for building the Home.  On March 7, 2006, Hall tendered his defense in the state-court action to Plaintiff pursuant to the Homeowner's Policy and Personal Umbrella Policy issued to Hall by Plaintiff.  On May 6, 2006, Plaintiff informed Hall by letter that it reserved all rights under the insurance policies and subsequently retained an attorney to represent Hall in the state-court action.

## The Insurance Policies at Issue

Plaintiff issued two insurance policies to Hall that are relevant in this action:  a Homeowner's Policy effective April 2, 1994, and a Personal Umbrella Policy effective May 19, 1999.

I.   **Homeowner's Policy**

The Homeowner's Policy issued to Hall by Plaintiff provides in part:

> **Coverage X**
> **Family Liability Protection**
> **Losses We Cover Under Coverage X:**
> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

The term "Occurrence" and "Property Damage" are defined as follows:

> **"Occurrence"** - means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.
>
> "**Property Damage**" - means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

The policy excludes the following:

> **Losses We Do Not Cover Under Coverage X:**
> **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

The term "business" is defined as follows:

> "**Business**" - means: (a) any full or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes . . . .

Homeowner's Policy at 3, 19, 21 (emphasis in original).

## II. Personal Umbrella Policy

The Personal Umbrella Policy issued to Hall by Plaintiff provides in part:

> **Excess Liability Insurance**
> This policy provides only excess insurance. It does not contribute with any Required Underlying Insurance or other insurance which applies to an **occurrence**. It is excess to any Retained Limit an **insured** assumes.

7 - OPINION AND ORDER

> **Coverage - When We Pay**
> **Allstate** will pay when an **insured** becomes legally obligated to pay for **personal injury** or **property damage** caused by an **occurrence**.
>
> **Personal Activities**
> Coverage applies to an **occurrence** arising only out of: personal activities of an **insured**. Activities related to any **business** or **business property** of an **insured** are not covered.
>
> **General Exclusions - When This Policy Does Not Apply**
> This policy will not apply: to any act, or failure to act, of any person in performing functions of that person's **business**. To any **occurrence** arising out of a **business** or **business property**. To **property damage** to any: a) property owned by an **insured**; or b) property owned by others an **insured** agreed to insure to be responsible for. To any liability of another person assumed by an **insured** under any contract.

The terms "Business," "Occurrence," "Personal Injury," and "Property Damage" are defined in the Policy:

> "**Business**" - means any full or part-time activity of any kind engaged in for economic gain . . . .
>
> "**Occurrence**" - means an accident or a continuous exposure to conditions.
>
> "**Personal Injury**" - means a) bodily injury, sickness, disease or death of any person. Bodily injury includes disability, shock, mental anguish and mental injury; b) false arrest; false imprisonment; wrongful detention; wrongful entry; invasion of rights of occupancy; or malicious prosecution; c) libel; slander; misrepresentation; humiliation; defamation of character; invasion of rights of privacy; and d) discrimination and violation of civil rights,

>       where recovery is permitted by law.  Fines
>       and penalties imposed by law are not
>       included.
>
>       "**Property Damage**" - means physical injury to
>       tangible property.  It includes resulting
>       loss of use.  This also means loss of use of
>       tangible property not physically injured if
>       the loss of use is caused by an **occurrence**
>       during the policy period.

Personal Umbrella Policy at 1-3, 5-6 (emphasis in original).

## DISCUSSION

In its Complaint, Plaintiff requests this Court to enter judgment declaring Plaintiff does not have a duty to defend or to indemnify Hall under the two insurance policies at issue because the Castros' claims against Hall in the state-court action arose out of business activities and a contract that are specifically excluded in those Policies.

The Castros, however, argue the Court should, in the exercise of its discretion, decline jurisdiction over this matter and dismiss Plaintiff's Complaint.  All Defendants also argue the Court should dismiss Plaintiff's Complaint on the ground that Plaintiff fails to state a valid claim because the Castros' state-court complaint includes allegations that are sufficient to establish Plaintiff's duty to defend Hall in the state-court action.

9 - OPINION AND ORDER

## The Castros' Motion to Dismiss
## Requesting the Court to Decline Jurisdiction

The Castros request the Court to exercise its discretion and to decline jurisdiction over this matter. The Castros, however, improperly invoke Federal Rule of Civil Procedure 12(b)(1). Rule 12(b)(1) provides for dismissal when there is a "lack of jurisdiction over the subject matter." The Castros, however, do not dispute this Court has jurisdiction. Instead the Castros merely contend the Court should exercise its discretion and decline jurisdiction as authorized under the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Thus, the Court will address only its discretionary jurisdiction under the Declaratory Judgment Act.

### I. Standards

The Declaratory Judgment Act provides:  "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The exercise of jurisdiction under the Declaratory Judgment Act is at the discretion of the district court. *Gov't Emp. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998). Thus, "[e]ven if the district court has subject matter jurisdiction, it is not required to exercise its authority to hear the case." *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002). "[A] District Court[, however,] cannot decline to entertain such an action as a matter of whim or

10 - OPINION AND ORDER

personal disinclination." *Id*. at 803. When determining whether to retain jurisdiction in a properly filed declaratory-judgment action, the court "must make a sufficient record of its reasoning to enable appropriate appellate review." *Id.*

There are three main factors for the court to consider when determining whether to exercise jurisdiction over a declaratory-judgment action (the "*Brillhart* factors" as set out in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942)):

1. avoiding needless determinations of state-law issues,
2. discouraging litigants from filing declaratory actions as a means of forum shopping, and
3. avoiding duplicative litigation.

*Id.*

## II. Analysis

With regard to the first *Brillhart* factor, this Court must decide whether it needlessly would be determining state-law issues. If this Court retains jurisdiction over Plaintiff's declaratory-judgment action, the Court only would be required to review the underlying state-law complaint as well as the applicable insurance policies and to apply well-established Oregon law to determine whether Plaintiff has a duty to defend and to indemnify Hall against the Castros' claims. Thus, there would not be any needless effort to determine state-law issues if

11 - OPINION AND ORDER

the Court retained jurisdiction.

Under the second *Brillhart* factor, there is not any evidence that Plaintiff's filing of a declaratory-judgment action in this Court is a means of forum shopping.  Although Plaintiff could have filed a declaratory-judgment action in state court, the record does not indicate Plaintiff's choice to do so in federal court favors either party.  In addition, the record does not reflect any declaratory-judgment action is pending between these parties in another forum.

As to the third *Brillhart* factor, "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief."  *Dizol*, 133 F.3d at 1225.  Here the underlying state-court action does not include Plaintiff as a party or raise the issue of Plaintiff's duty to defend or to indemnify Hall.  Thus, the record does not reflect any duplicative litigation will occur if this Court retains jurisdiction over Plaintiff's declaratory-judgment action.

In *Dizol*, the court also noted other factors that may be relevant to the court's decision whether to retain or to decline jurisdiction over a declaratory-judgment action:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a

12 - OPINION AND ORDER

> declaratory action will result in
> entanglement between the federal and state
> court systems. In addition, the district
> court might consider the convenience of the
> parties, and the availability and relative
> convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5. These other factors also do not favor the exercise of this Court's discretion to decline jurisdiction in this matter because this declaratory-judgment action (1) will determine whether Plaintiff's insurance policies cover Hall under these facts, (2) will determine whether Plaintiff has a duty to defend and/or to indemnify Hall against the claims in the underlying state-court action, (3) will serve a useful purpose in clarifying the legal relations at issue, and (4) will not interfere with or directly impact the underlying state-court action. Moreover, Plaintiff clearly identifies the declaratory-judgment relief requested, and it appears the Court will not need to delve into any of the underlying state-court liability issues.

Although the Castros argue this declaratory-judgment action forces them "to divert significant resources and energy to defend this action" and the necessity of litigating both this action and the state-court action simultaneously imposes "a significant hardship," the Castros would be required to devote similar resources to defend a declaratory-judgment action by Plaintiff in state court. Thus, the Castros fail to identify any additional hardship or inconvenience they will suffer by litigating the

13 - OPINION AND ORDER

insurance-coverage issues in federal court rather than in state court.

On this record, therefore, the Court, in the exercise of its discretion, retains jurisdiction over this matter and accordingly, denies the Castros' Motion to Dismiss Plaintiff's Complaint to the extent that they request the Court to decline jurisdiction.

## **Defendants' Motions to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)**

### I.   Standards

Dismissal under Fed. R. Civ. P. 12(b)(6) "for failure to state a claim is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'"  *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party.  *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1998).

A court should not dismiss a complaint, thus depriving the plaintiff of an opportunity to establish his claims "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)(quoting

14 - OPINION AND ORDER

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## II. Analysis

Defendants argue the Court should dismiss Plaintiff's Complaint for failure to state a claim on the ground that the allegations in the Castros' state-court complaint entitles Hall to be defended by Plaintiff. Defendants contend Plaintiff would be required to develop evidence outside of the allegations in the state-court complaint and the two insurance policies in order to bring a meaningful declaratory-judgment action even though developing any such evidence is prohibited.

Whether an insurer has a duty to defend an action against its insured depends on only two documents: the complaint and any applicable insurance policies. *Ledford v. Gutoski*, 319 Or. 397, 399 (1994). Under Oregon law, an insurer may not develop evidence in a declaratory-judgment proceeding to establish that its policy does not apply to the claim asserted against its insured in an underlying action before the conclusion of the underlying action. *N. Pacific Ins. Co. v. Wilson's Dist. Serv., Inc.*, 138 Or. App. 166, 170 (1995).

An insurer has a duty to defend an action against its insured if the underlying complaint states a claim against the insured that could impose liability for conduct covered under an insurance policy. *Ledford*, 319 Or. at 399-400. When evaluating whether an insured has a duty to defend, the court looks only at

15 - OPINION AND ORDER

the applicable insurance policies and the facts alleged in the complaint to determine whether those facts provide a basis for relief that could be covered under the policy. *Id.* at 400. Any ambiguity in the complaint with respect to whether claims in the complaint could be covered are resolved in favor of the insured. *Id.* Thus, Plaintiff acknowledges this prohibition and asserts it will only use the Castros' state-court complaint and the insurance policies at issue to prove that it does not have a duty to defend or to indemnify Hall.

As noted, the insurance policies at issue exclude coverage for "business activities" and any liability arising out of a "contract or agreement." As evidence that it does not have a duty to provide coverage, Plaintiff argues the Castros' state-court claims are based on allegations that Hall engaged in the following business activities: Hall acted as a joint venturer in selling the Home to the Castros as a new, unoccupied home; Hall acted as the general contractor and builder of the Home; and Hall breached the Sales Agreement with the Castros wherein he agreed and promised the Home would be weatherproof and would be constructed in a reasonable and workmanlike manner in accordance with the Building Code.

Defendants, however, argue the Castros' state-court complaint does not allege any actions by Hall that were considered business activities or that fall under contract

16 - OPINION AND ORDER

claims.  Specifically, Defendants argue the Castros do not allege Hall built the Home for a business purpose or pursuant to a contract.  In addition, even if the Castros' state-court complaint is not clear as to Hall's activities, Defendants contend any ambiguity must be resolved in favor of the insured.

At this stage of the litigation, however, the Court concludes it is not "beyond doubt" that Plaintiff would receive relief under the facts as set out in Plaintiff's declaratory-judgment action, which appear to revolve around the meaning and use of relevant terms in the insurance policies and the Castros' allegations in their state-court complaint.  Accordingly, the Court denies Defendants' Motions to Dismiss pursuant to Rule 12(b)(6).


## CONCLUSION

For these reasons, the Court, in the exercise of its discretion, retains jurisdiction over this matter and concludes Plaintiff has sufficiently stated a claim.  Accordingly, the Court **DENIES** Defendants' Motions to Dismiss (#12, #15, and #18).

IT IS SO ORDERED.

DATED this 29th day of August, 2006.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

17 - OPINION AND ORDER